1  Peter E. Perkowski (SBN 199491)
   peter@perkowskilegal.com
2  PERKOWSKI LEGAL, PC
   515 S. Flower Street
3  Suite 1800
   Los Angeles, California 90071
4  Telephone: (213) 340-5796

5  Attorneys for Plaintiff
6  XPOSURE PHOTO AGENCY INC.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| XPOSURE PHOTO AGENCY INC., | Case No.: 2:23-cv-10103-MRA (AGRx) |
| *Plaintiff*, | *Hon. Mónica Ramírez Almadani* |
| v. | **NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT BY COURT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PETER PERKOWSKI; DECLARATION OF JON NICOLINI** |
| CHRISTOPHER BROWN, | |
| *Defendant*. | |
| | Date:      September 5, 2024 |
| | Time:      1:30 p.m. |
| | Place:     10B, First St. Courthouse |

TO THE HONORABLE COURT, PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE THAT on September 5, 2024, at 1:30 p.m., or as soon thereafter as this matter may be heard by the above-entitled Court, Plaintiff Xposure Photo Agency Inc. will and hereby does request, under Fed. R. Civ. P. 55 and this Court's orders, entry of default judgment against Defendant Christopher Brown.

This application is made on the grounds that Mr. Brown has failed to appear and defend the claims against it despite being both properly served and actually aware of the case. Although no appearance was made by Mr. Brown personally or through a representative, this Notice and Motion were served on Mr. Brown by placing a copy

in the mail on July 9, 2024, and by emailing a copy to his legal representative on the same day.

This Application is based on this Notice, the Memorandum of Points and Authorities, the declarations of Peter Perkowski, and the pleadings, file and other matters that may be presented at or before the hearing on this matter.

Dated: July 9, 2024                    Respectfully submitted,

                                       **PERKOWSKI LEGAL, PC**


                                       By:    /s/ Peter Perkowski
                                       Peter E. Perkowski

                                       Attorneys for Plaintiff
                                       XPOSURE PHOTO AGENCY INC.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND....................................................................................1

   A.     Relevant facts ..............................................................................1

   B.     Procedural history ...................................................................... 2

III.    LEGAL STANDARD ........................................................................... 2

IV.     DISCUSSION ....................................................................................... 2

   A.     Jurisdiction ................................................................................ 2

      1.     The Court has subject matter jurisdiction..................................3

      2.     The Court has personal jurisdiction over Mr. Brown, and proper
           service was effected. ...............................................................3

   B.     Well-pleaded facts are admitted and establish Mr. Brown's liability. ..... 6

   C.     The remaining *Eitel* factors weigh in favor of default judgment...............7

   D.     Xposure has shown that Mr. Brown's infringement was willful. ........... 9

   E.     Xposure is entitled to an award of damages..........................................10

      1.     Actual damages are appropriate but insufficient.................................10

      2.     Statutory damages for willful infringement are appropriate................... 11

      3.     Xposure is entitled to attorney fees and costs......................................... 13

      4.     The Court should award interest. ..........................................................14

V.      CONCLUSION ..................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ........................................................10

*Adobe Sys. Inc. v. Kern*, C 09-1076 CW (JL),
  2009 WL 5218005 (N.D. Cal. Nov. 24, 2009).......................................15

*Arista Records, Inc. v. Beker Enters., Inc.*,
  298 F. Supp. 2d 1310 (S.D. Fla. 2003)..............................................13

*Autodesk, Inc. v. Flores*, No. 10-cv-1917-LHK,
  2011 WL 337836 (N.D. Cal. Jan. 31, 2011)..............................11, 12, 13

*Bein v. Brechtel-Jochim Group, Inc.*,
  6 Cal. App. 4th 1387, 8 Cal. Rptr. 2d 351 (1992) .............................8, 9

*Broadcast Music, Inc. v. Kiflit*, No. 12-cv-856-LHK,
  2012 WL 4717852 (N.D. Cal. Oct. 2, 2012) ...........................11, 12, 13, 16

*Broadcast Music, Inc. v. Prana Hosp., Inc.*, No. 15 Civ. 1987 (PAE),
  2016 WL 280317 (S.D.N.Y. Jan. 21, 2016) ........................................16

*Business Wire Inc. v. eMediaWorld Inc.*, No. C-08-3765 EDL,
  2009 WL 10692096 (N.D. Cal. Mar. 2, 2009)......................................17

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016)...............................................16

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008).......................................................13

*Dish Network L.L.C. v. Silva*, No. 14-cv-4848-LHK,
  2015 WL 2229304 (N.D. Cal. May 12, 2015) ........................................6

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986).......................................................6

i

*Elektra Entm't Group Inc. v. Crawford*,
  226 F.R.D. 388 (C.D. Cal. 2005)....................................................................17

*Erickson Productions, Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ........................................................................13

*Espindola v. Nunez*,
  199 Cal. App. 3d 1389, 245 Cal. Rptr. 596 (1988)........................................10

*Express, LLC v. Fetish Group, Inc.*,
  424 F. Supp. 2d 1211 (C.D. Cal. 2006) .........................................................11

*F.I. duPont, Glore Forgan & Co. v. Chen*,
  41 N.Y.2d 794, 396 N.Y.S.2d 343, 364 N.E.2d 1115 (1977) ........................ 9

*F.W. Woolworth Co. v. Contemporary Arts*,
  344 U.S. 228, 73 S. Ct. 222, 97 L. Ed. 276 (1952) .......................................15

*Fallaci v. New Gazette Literary Corp.*,
  568 F. Supp. 1172 (S.D.N.Y. 1983)...............................................................13

*In re Tuli*,
  172 F.3d 707 (9th Cir. 1999) ...........................................................................7

*Jackson v. Hayakawa*,
  682 F.3d 1344 (9th Cir. 1982)..........................................................................7

*James v. Frame*,
  6 F.3d 307 (5th Cir. 1993) ..............................................................................17

*MDOF Wells, LLC v. Total Prop. Solutions, Inc.*, No. 22-cv-3631-TSH,
  2022 WL 18456822 (N.D. Cal. Dec. 12, 2022)................................................7

*Michael Grecco Productions, Inc. v. Function(X) Inc.*,
  No. 18 Civ. 386 (NRB) (S.D.N.Y. 2019) .......................................................12

*Microsoft Corp. v. Nop*,
  549 F. Supp. 2d 1233 (E.D. Cal. 2008) ..........................................................12

*Microsoft Corp. v. Wen*, No. C 99-4651 MEJ,
  2001 WL 1456654 (N.D. Cal. Nov. 13, 2001) ...............................................13

ii

*Montgomery v. Noga*,

    168 F.3d 1282 (11th Cir. 1999)...................................................................14

*Panavision Int'l, L.P. v. Toeppen*,

    141 F.3d 1316 (9th Cir. 1998) ...................................................................7

*Peer Int'l Corp. v. Pausa Records, Inc.*,

    909 F.2d 1332 (9th Cir. 1990)............................................................15, 16

*Pena v. Seguros La Comercial, S.A.*,

    770 F.2d 811 (9th Cir. 1985) ...................................................................13

*Pension Tr. Fund for Operating Eng'rs v. Kick Enters.*,

    2012 WL 6711557 (N.D. Cal. Dec. 20, 2012) .......................................... 8

*PepsiCo Inc. v. Cal. Sec. Cans*,

    238 F. Supp. 2d 1172 (C.D. Cal. 2002) .................................................. 11

*Tele Video Sys., Inc. v. Heidenthal*,

    826 F.2d 915 (9th Cir. 1987).................................................................... 6

*Thornton v. J Jargon Co.*,

    580 F. Supp. 2d 1261 (M.D. Fla. 2008) .................................................14

*Twentieth Century Fox Film Corp. v. Streeter*,

    438 F. Supp. 2d 1065 (D. Ariz. 2006)...............................................12, 17

*Unicolors, Inc. v. Urban Outfitters, Inc.*,

    853 F.3d 980 (9th Cir. 2017) ...................................................................13

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,

    630 F.3d 1255 (9th Cir. 2011) .................................................................10

*Wallis v. Plutos Sama Holdings, Inc.*, No. 8:21-cv-1792 JLS (KESx),

    2023 WL 9318998 (C.D. Cal. Dec. 6, 2023) .......................................... 9

**Statutes**

17 U.S.C. § 106 ...........................................................................................11

17 U.S.C. § 410(c) .......................................................................................10

17 U.S.C. § 501(a).......................................................................................11

17 U.S.C. § 504(b) ........................................................................................ 14

17 U.S.C. § 504(c) ........................................................................................ 15

17 U.S.C. § 505 ............................................................................................ 17

17 U.S.C. §§ 501 et seq. ................................................................................ 7

28 U.S.C. § 1331 ........................................................................................... 7

28 U.S.C. § 1338(a) ...................................................................................... 7

28 U.S.C. § 1961 .......................................................................................... 18

Cal. Code Civ. Proc. § 415.20(b) ................................................................ 8

## Rules

Fed. R. Civ. P. 55(b)(2) ................................................................................ 6

Fed. R. Civ. Proc. 4(e)(1) ............................................................................. 8

L.R. 55-3 ...................................................................................................... 17

MOTION FOR DEFAULT JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This motion concerns a case of copyright infringement of three photographic images (the "Photographs") owned by plaintiff Xposure Photo Agency Inc. Defendant Christopher Brown used the Photographs—images of him out in public— by posting them to his Instagram account. Nicolini Decl. ¶ 3. Yet defendant did not have authorization to use the Photographs, and he did not pay for that use.

Mr. Brown was properly served and is aware of this action, yet he failed to defend. Perkowski Decl. ¶¶ 3-6. Accordingly, Xposure now moves this Court to enter default judgment against defendant in the amount of $96,254.40. This amount includes $90,000 in statutory damages for copyright infringement, $1054.40 in costs, and $5,200 in attorneys' fees.

## II.   BACKGROUND

### A. Relevant facts

Plaintiff Xposure is a global premier celebrity news and photo agency that licenses celebrity content to news outlets, media entities, and other licensees throughout the world. Compl. ¶ 3. Three such photographs depicted celebrity musical artist Chris Brown. Compl. ¶ 10; Nicolini Decl. ¶ 3. Xposure registered the images with the U.S. Copyright Office and obtained a Certificate with Registration No. VA 2-239-789, effective January 5, 2021. Compl. ¶ 10; Nicolini Decl. ¶ 4 & Ex. 2. The images were registered within 90 days of first publication. Nicolini Decl. ¶ x & Ex. 2.

Defendant Chris Brown is a well-known American singer, songwriter, rapper, and actor. Compl. ¶ 6. Mr. Brown operates or is otherwise responsible for the content of the social media account @chrisbrownofficial on Instagram. Compl. ¶ 7. On October 9, 2020, Mr. Brown copied the three Photographs depicting him and posted them to his Instagram account. Compl. ¶ 12; Nicolini Decl. ¶ x & Ex. 1. Mr. Brown

did not have authorization to copy or display the Photographs, and he did not pay a license fee. Compl. ¶ 11.

## B. Procedural history

Xposure filed the complaint in this action on November 30, 2023. ECF 1. The complaint asserted one claim for copyright infringement for Mr. Brown's use of the Photographs. *Id.* Xposure served Mr. Brown on January 29, 2024, by substitute service at his residence in Los Angeles. ECF 16. On March 27, 2024, Xposure filed a request for entry of default against Mr. Brown (ECF 17), and the clerk entered default on April 1, 2024 (ECF 18).

## III.    LEGAL STANDARD

Under Fed. R. Civ. P. 55(b)(2), "the court may enter a default judgment when the clerk, under Rule 55(a), has previously entered the party's default." *Dish Network L.L.C. v. Silva*, No. 14-cv-4848-LHK, 2015 WL 2229304, at *2 (N.D. Cal. May 12, 2015). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Tele Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). In evaluating a request for entry of default judgment, the Court considers several factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.    DISCUSSION

Consideration of the relevant factors shows that default judgment against Mr. Brown is appropriate here.

## A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction

over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The Complaint in this matter names as the sole defendant Christopher Brown, who is a resident of Los Angeles. Compl. ¶ 8. Mr. Brown infringed Xposure's copyright in three photographic images by copying them and displaying them on Instagram. Compl. ¶¶ 11-12. With respect to that claim and defendant, both subject matter and personal jurisdiction are present here.

### 1. The Court has subject matter jurisdiction.

Xposure's claim arises under the Copyright Act, 17 U.S.C. §§ 501 *et seq.*, and the Court has subject matter jurisdiction over those claims. Two statutes provide jurisdiction here:  Federal law gives district courts "original jurisdiction of any civil action arising under any Act of Congress relating to … copyrights." 28 U.S.C. § 1338(a). Similarly, federal law gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The Court has subject matter jurisdiction over the claims asserted.

### 2. The Court has personal jurisdiction over Mr. Brown, and proper service was effected.

The Court has personal jurisdiction over Mr. Brown because he is domiciled in Tarzana (Compl. ¶ 8; Proof of Service (ECF 16)), which is in this state and judicial district. "General jurisdiction exists when a defendant is domiciled in the forum state." *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998); *see also MDOF Wells, LLC v. Total Prop. Solutions, Inc.*, No. 22-cv-3631-TSH, 2022 WL 18456822, at *3 (N.D. Cal. Dec. 12, 2022) (finding personal jurisdiction over an individual who was domiciled and resided in a city within the court's judicial district).

Moreover, Mr. Brown was properly served. Proper service, in accordance with the Federal Rules of Civil Procedure, is a necessary predicate for personal jurisdiction. *See Jackson v. Hayakawa*, 682 F.3d 1344, 1347 (9th Cir. 1982); *Pension Tr. Fund for Operating Eng'rs v. Kick Enters.*, 2012 WL 6711557, at *3 (N.D. Cal. Dec. 20,

2012) ("[W]here entry of default judgment is requested, the Court must determine whether service of process was adequate."). Among other options, Rule 4 permits an individual to be served in accordance with state law. Fed. R. Civ. Proc. 4(e)(1). Here, service on Mr. Brown was proper under California law—namely, California Code of Civil Procedure § 415.20(b).

Section 415.20(b) sets forth the method for service of process on an individual. It provides:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served … a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address … in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address … at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing … by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. Proc. § 415.20(b). Xposure has met all the requirements for proper service under this statute.

*First*, service took place at Mr. Brown's "dwelling house, usual place of abode, usual place of business, or usual mailing address." Specifically, he was served at a Tarzana address that has been publicized as the location of his residence. Perkowski Decl. ¶ 3.

*Second*, Mr. Brown was served by leaving a copy of the summons and complaint at that Tarzana address. *See* Proof of Service (ECF 16) ¶ 1.a (checked boxes indicating that "copies of the" summons and complaint were served).

*Third*, the copies were left "in the presence of a competent member of the household or a person apparently in charge." At least one California court has held that Section 415.20(b) is satisfied by serving a person with authority who is controlling access to a residence in a gated community. *See Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1390-93, 8 Cal. Rptr. 2d 351, 352-54 (1992). Under *Bein*, because a "residential gate guard" had been authorized by the individual

defendants to control access to them and their residence, he "*must be* considered a competent member of the household *and* the person apparently in charge." *Bein*, 6 Cal. App. 4th at 1393, 8 Cal. Rptr. 2d at 354 (emphases added); *see also F.I. duPont, Glore Forgan & Co. v. Chen*, 41 N.Y.2d 794, 798, 396 N.Y.S.2d 343, 346, 364 N.E.2d 1115, 1118 (1977) (substitute service on apartment building doorman who blocked access to individual's apartment was statutorily sufficient), *cited favorably in Bein*, 6 Cal. App. 4th at 1393, 8 Cal. Rptr. 2d at 354. Allowing service to be effected on gatekeepers satisfies the "evident purpose" of Section 415.20, which is to permit service on a "responsible person … whose relationship with the person to be served makes it more likely than not that they will deliver process to the named party." *Bein*, 6 Cal. App. 4th at 1393, 8 Cal. Rptr. 2d at 354 (internal quotation marks omitted). As in *Bein*, the gate guard here falls into this class of responsible persons, so substitute service on the gate guard was proper. Notably, at least one court in this district has followed *Bein*, holding that leaving copies of the summons and complaint with "the person who controlled access to—and was therefore apparently in charge of"—a defendant's law office was "sufficient to constitute compliance with § 415.20(b)." *Wallis v. Plutos Sama Holdings, Inc.*, No. 8:21-cv-1792 JLS (KESx), 2023 WL 9318998, at *2 (C.D. Cal. Dec. 6, 2023). The Court should do so here as well.

   *Fourth*, the gate guard was over 18 and was informed of the nature of the documents that were left with him. *See* Proof of Service (ECF 16) ¶ 4.b (indicating that papers were left with "African America mail, 32 years old"); *id.* ¶ 4.b.1 (checked box indicating that person "was informed of the general nature of the papers").

   *Fifth*, the copies were left after the process server had attempted "with reasonable diligence" to personally deliver the summons and complaint with Mr. Brown personally. *See* Declaration of Diligence (ECF 16) (setting forth attempts at personal service before effecting substitute service). Three attempts at personal service were made here, a number that has almost universally been held to constitute reasonable diligence. *See*, *e.g.*, *Bein*, 6 Cal. App. 4th at 1391, 8 Cal. Rptr. 2d at 353

MOTION FOR DEFAULT JUDGMENT

(substitute service on gate guard was proper under Section 415.20(b) after process server "made three separate attempts to serve [individual defendants] at their residence"); *see also Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392, 245 Cal. Rptr. 596 (1988) ("Ordinarily, … two or three attempts at personal service … should fully satisfy the requirement of reasonable diligence … ." (internal quotation marks omitted)).

*Sixth*, and finally, copies of the summons and complaint were mailed to the Tarzana address the same day, after substitute service on the gate guard. *See* Proof of Service (ECF 16) ¶ 4.b.5 (checked boxes indicating that papers were mailed); *see also* Proof of Mailing (ECF 16).

Accordingly, service was proper, and the Court has personal jurisdiction over Mr. Brown.

**B. Well-pleaded facts are admitted and establish Mr. Brown's liability.**

The *Eitel* factors on the merits of the claim and sufficiency of the pleading weigh heavily in favor of default judgment. To establish a claim for copyright infringement, a plaintiff "must show ownership of the allegedly infringed material," and "must demonstrate that the alleged infringer[] violate[d] at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). That showing is made here.

***Ownership*:** Xposure has alleged that the Photograph at issue in this case is the subject of a valid Certificate of Copyright Registration issued by the Registrar of Copyrights—specifically, Registration No. VA 2-239-789 (effective January 5, 2021)—and that Xposure is the owner of that copyright. Comp. ¶ 10. Xposure's copyright agent confirms those allegations. Nicolini Decl. ¶ 4 & Ex. 2. "A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate,'" including ownership. *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)); *Express,*

1  *LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1217 (C.D. Cal. 2006). Xposure has

2  therefore satisfied this requirement.

3        ***Infringement***:  In addition, Xposure has also demonstrated that Mr. Brown

4  violated Xposure's exclusive rights of copyright by copying and displaying the

5  Photographs without authorization: Specifically, Mr. Brown used the Photographs by

6  copying them and displaying them on Instagram, without authorization or license.

7  Compl. ¶¶ 11-12. These allegations make out a claim for copyright violation. *See* 17

8  U.S.C. § 501(a) (infringement occurs when alleged infringer engages in activity listed

9  in § 106); 17 U.S.C. § 106(1), (5) (listing reproduction of copyright works and public

10  display of pictorial works as among the exclusive rights of a copyright owner). The

11  declarations and evidence here confirm the allegations. Nicolini Decl. ¶ 3 & Ex. 1.

12  Xposure therefore has stated a valid claim for copyright infringement. *E.g.*, *Autodesk,*

13  *Inc. v. Flores*, No. 10-cv-1917-LHK, 2011 WL 337836, at *3 (N.D. Cal. Jan. 31, 2011)

14  (allegation of ownership, with identification of copyright certificate registration

15  numbers and dates, and allegation of copying and distribution, along with information

16  to support allegations, was sufficient to establish copyright claim); *Broadcast Music,*

17  *Inc. v. Kiflit*, No. 12-cv-856-LHK, 2012 WL 4717852, at *2 (N.D. Cal. Oct. 2, 2012)

18  (well-pleaded allegations sufficient to support default judgment).

19        In light of the above, the second and third *Eitel* factors favor entry of default

20  judgment.

21    **C. The remaining *Eitel* factors weigh in favor of default judgment.**

22        The remaining *Eitel* factors also favor entry of default judgment.

23        ***Prejudice***: Xposure will be prejudiced if default judgment is not entered.

24  "Because Defendant has refused to take part in the litigation, Plaintiff[] will be denied

25  the right to adjudicate the claims and obtain relief if default judgment is not granted."

26  *Broadcast Music*, 2012 WL 4717852, at *3 (citing *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.

27  Supp. 2d 1172, 1177 (C.D. Cal. 2002)). This factor favors entry of default judgment.

28

**Stakes**: The sum of money at stake here is not large—or at least "not so large or burdensome to necessitate denying the motion on this basis alone." *Broadcast Music*, 2012 WL 4717852, at *3. Courts in this State have granted default judgment for amounts similar to or larger than that being sought here. *E.g.*, *Autodesk*, 2011 WL 1884694, at *1-3 (awarding attorney fees and costs of $41,150 on top of $82,500 statutory damages previously awarded). Default judgments for photo agencies in similar amounts are not uncommon. *E.g.*, *Michael Grecco Productions, Inc. v. Function(X) Inc.*, No. 18 Civ. 386 (NRB) (S.D.N.Y. 2019) (award of $71,655 in damages plus $2,495.95 in fees and costs for infringement of two images). The amount that Xposure seeks here—slightly more than $95,000—is not so large that it counsels against entry of default judgment.

**Excusable neglect/Disputed facts**: There is nothing to suggest that the material facts are disputed or that the default is due to excusable neglect. "[B]ecause [Defendant] has not presented a defense or otherwise communicated with the Court, there is no indication that Defendant's default is due to excusable neglect or that the material facts are subject to dispute." *Broadcast Music*, 2012 WL 4717852, at *3 (citing *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071-72 (D. Ariz. 2006)). In fact, given the default, "there is no apparent possibility of a dispute concerning the material facts underlying the action." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008).

In fact, there is information that indicates Mr. Brown is aware of this litigation and is actively avoiding it. Mr. Brown's legal representative has been aware of this litigation for several months, including the need for Xposure to file a motion for default judgment in accordance with this Court's orders. Perkowski Decl. ¶ 3. Mr. Brown apparently has declined to engage litigation counsel to represent him in this matter. This factor thus favors entry of default judgment.

**Policy**: Finally, "although strong public policy favors decisions on the merits, it does not appear that litigation on the merits will be possible" due to Mr. Brown's

1   refusal to appear. *Broadcast Music*, 2012 WL 4717852, at *3 (citing *Pena v. Seguros La*
2   *Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). This *Eitel* factor also favors entry
3   of default judgment.

4      **D. Xposure has shown that Mr. Brown's infringement was willful.**

5          The Court should find that Mr. Brown committed willful infringement. "[T]o
6   prove willfulness under the Copyright Act, the plaintiff must show (1) that the
7   defendant was actually aware of the infringing activity, or (2) that the defendant's
8   actions were the result of reckless disregard for, or willful blindness to, the copyright
9   holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir.
10  2017), *cited in Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019).
11  This Court may infer that Mr. Brown willfully infringed Xposure's copyright because
12  he failed to defend. *See Autodesk*, 2011 WL 337836, at *8; *Arista Records, Inc. v. Beker*
13  *Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (citing cases, including
14  *Microsoft Corp. v. Wen*, No. C 99-4651 MEJ, 2001 WL 1456654, at *4 (N.D. Cal.
15  Nov. 13, 2001)); *see also Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173
16  (S.D.N.Y. 1983).

17         In addition to the inference based on the default, "all factual allegations in the
18  complaint are deemed true, including the allegation of [defendant's] willful
19  infringement." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir.
20  2008). Here, the Complaint alleges facts showing that Mr. Brown was reckless or
21  willfully blind. Namely, the Complaint alleges that Mr. Brown is a musician, thus
22  operating in an industry where copyrights are both prevalent and well understood.
23  Compl. ¶ 16. Given this level of sophistication and knowledge of copyright ownership
24  and rights, Mr. Brown's reproduction and display of the Photographs without
25  obtaining, or even seeking, permission from Xposure show at the very least that he
26  acted with reckless disregard of or willful blindness to the facts that his conduct
27  infringed on Xposure's exclusive copyrights in the Photographs. His conduct was
28  therefore willful.

**E. Xposure is entitled to an award of damages.**

Xposure requests the following relief and any other relief the Court may deem just and proper.

**1. Actual damages are appropriate but insufficient.**

A "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." 17 U.S.C. § 504(b). Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement," and "a claim for lost profits may include a retroactive license fee measured by what the plaintiff would have earned by licensing the infringing use to the defendant." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D. Fla. 2008) (citing *Montgomery v. Noga*, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)). The fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." *Id.* Here, the evidence shows that Xposure routinely obtains license fees worth thousands of dollars—sometimes as high as $50,000. Nicolini Decl. ¶ 5. The amount varies based on numerous factors such as the subject matter of the image, the geographic location and reach of the licensee, and the existence and length of any exclusivity terms. Nicolini Decl. ¶ 5.

Because Mr. Brown has refused to participate in discovery, however, Xposure is without information that could point to additional damages—namely, the amount of profits (if any) that Mr. Brown obtained from his infringement. *See* 17 U.S.C. § 504(b). An award only of actual damages is insufficient for that reason.

An actual damages award is insufficient for the additional reason that it does not provide for a penalty to deter potential future infringements, by Mr. Brown himself as well as similarly situated actors. Here, an award sufficient to punish and deter is necessary because, as alleged in the Complaint, infringements like Mr. Brown's are a serious threat to Xposure's business model, which depends on syndicated licensing of celebrity content to multiple licensees. Compl. ¶¶ 13-15. Mr. Brown's Instagram post made the Photographs immediately available to his

followers—nearly 150 million of them—and to the public. Compl. ¶ 14; Nicolini Decl. ¶ 3. The Instagram post here, and others in the future, directly competed with Xposure's license-paying customers, including media companies who often pay large license fees for such content. Compl. ¶ 15. As a matter of basic economics, that direct competition drives down the price that Xposure can obtain through legitimate licensing: customers will insist on paying less for a license when the identical content is available (for free) in a celebrity Instagram post, and when the consumers celebrity entertainment news can view the content (for free) on Instagram rather than paying to licensed versions in magazines, newspapers, and other online publications that are Xposure's customers. Compl. ¶¶ 14-15.

An award sufficient to deter future infringements, thus protecting Xposure's business model, is necessary. Xposure therefore seeks an award of statutory damages for Mr. Brown's infringement.

**2. Statutory damages for willful infringement are appropriate.**

The Copyright Act allows Xposure to elect to recover statutory damages in a sum not less than $750 and not more than $30,000 per work. *See* 17 U.S.C. § 504(c). For willful infringement, the maximum amount may be increased to up to $150,000 per work. *Id.* When determining the amount of statutory damages in the context of default judgment in a copyright infringement action, the Court is guided by "the nature of the copyright, the circumstances of the infringement and the ... express qualification that in every case the assessment must be within the prescribed maximum or minimum." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). Moreover, "in addition to compensating Plaintiff, statutory damages are intended to provide a penalty against defendants and deter potential future infringement by similarly situated actors." *Adobe Sys. Inc. v. Kern*, C 09-1076 CW (JL), 2009 WL 5218005, at *1 (N.D. Cal. Nov. 24, 2009); *see also F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 73 S. Ct. 222, 97 L. Ed. 276 (1952).

Particularly in the default judgment context, courts in this Circuit and elsewhere regularly use a multiple of a typical or comparable licensing fee when calculating statutory damage. *E.g.*, *Broadcast Music*, 2012 WL 4717852, at *4 (citing cases and awarding three times licensing fee); *see also Broadcast Music, Inc. v. Prana Hosp., Inc.*, No. 15 Civ. 1987 (PAE), 2016 WL 280317, at *10 (S.D.N.Y. Jan. 21, 2016) ("Second Circuit case law ... reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 410 (S.D.N.Y. 2016) (awarding five times license fee). Notably, though, the three-to-five multiple is for instances of ordinary infringement. For willful infringement, a higher multiple is justified.

Though Xposure may seek statutory damages of up to $450,000 for willful infringement—$150,000 for each of three Photographs—it requests only $90,000. The amount is equal to the maximum award for ordinary infringement, or $30,000 for each of Photograph. The amount also represents a figure that is five times a license fee of $6,000 for each of three Photographs, and $6,000 is near the bottom end of the range of fees that Xposure obtains in licensing celebrity content. Nicolini Decl. ¶ 5. The amount therefore bears a "plausible relationship" to Xposure's actual damages. *Peer Int'l*, 909 F.2d at 1136.

In addition, a $90,000 award includes a penalty to deter future infringements, protecting Xposure's business model. As discussed above, Xposure will suffer significant economic consequences if its copyrighted photographic images can be stolen and widely distributed on the internet without consequences that deter. The financial incentive to steal proprietary photography, particularly high-value celebrity content, is enormous. It is thus critical to adequately deter and sanction infringing activity. Because the economic effect of Mr. Brown's infringement, and others like it, is a downward price pressure on Xposure's fees, a larger award is justified here. *E.g.*,

*Business Wire Inc. v. eMediaWorld Inc.*, No. C-08-3765 EDL, 2009 WL 10692096, at *4 (N.D. Cal. Mar. 2, 2009) (in motion for default, awarding maximum award for ordinary infringement, $30,000, when plaintiff included sufficient facts of to demonstrate willfulness).

### 3.  Xposure is entitled to attorney fees and costs.

A court may award "full costs, including reasonable attorneys' fees, to the prevailing party in a claim arising under the Copyright Act." 17 U.S.C. § 505. Where a plaintiff is entitled to attorney fees by statute, the Court may award reasonable attorney fees with a default judgment in its discretion. *See James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993); *see also Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388 (C.D. Cal. 2005) (awarding full costs in default judgment in copyright infringement action). "An award of attorneys' fees would promote the protection of copyrights and further the goal of deterrence, by encouraging infringement actions for such violations." *Twentieth Century Fox Film Corp.*, 438 F. Supp.2d at 1075. In view of the willful nature of the infringement and Mr. Brown's failure to participate in this action, and award of full costs and fees is appropriate.

Here, Xposure requests attorney fees in accordance with this Court's Local Rules, under which the Court may grant attorney fees according to a specific award schedule. *See* L.R. 55-3. As applicable here, the schedule allows an award calculated as follows:

| Amount of Judgment | Attorneys' Fees Awards |
|---|---|
| $50,000.01 - $100,000 | $3600 plus 4% of the amount over $50,000 |

L.R. 55-3. Xposure seeks a judgment of $90,000 here; the amount over $50,000 is $40,000, and 4% of that is $1,600. Added to $3,600, the total amount that the Court may award under the Local Rules is $5,200.

Xposure also seeks recovery of its costs in the amount of $1,054.40. The amount and reasonableness of the costs are established in detail by the Declaration of Peter Perkowski, submitted with this Memorandum.

1

**4.  The Court should award interest.**

2      Under 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in

3   a civil case recovered in a district court." Accordingly, the Court should award

4   interest from the date of the judgment until satisfaction of the award.

5   **V.      CONCLUSION**

6      Xposure respectfully requests that the Court enter default judgment against

7   defendant and in favor of plaintiff in the amount of $96,254.40.

8

9   Dated:  July 9, 2024              Respectfully submitted,

10                                    **PERKOWSKI LEGAL, PC**

11                                    By:    /s/ Peter Perkowski
                                             _____
12                                           Peter E. Perkowski

13                                           Attorneys for Plaintiff
                                             XPOSURE PHOTO AGENCY INC.
14

15

16          **CERTIFICATE OF COMPLIANCE UNDER L.R. 11-6.2**

17      The undersigned, counsel of record for Plaintiff Xposure Photo Agency Inc.,

18   certifies that this brief contains 4,467 words as measured by the word count feature in

19   Microsoft Word, which complies with the word limit of L.R. 11-6.1.

20      Date: July 9, 2024

21                                            /s/ Peter E. Perkowski
                                             _____
22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2024, I served the foregoing document on the interested parties to this action by placing the document in a sealed envelope addressed as below and depositing the same with the U.S. Postal Service at Los Angeles, California, U.S Priority Mail, for delivery in the usual course:

> Christopher Brown
> 19602 Citrus Ridge Dr.
> Tarzana, CA 91356

and by attaching it to an email addressed and sent to defendant's legal representative as follows:

> Matthew Kamen
> mkamen@gispc.com

I declare under penalty of perjury pursuant to the laws of the State of California that the above is true and correct. Executed on July 9, 2024, Los Angeles, California.


/s/ Peter Perkowski
Peter E. Perkowski